Gaston J.
 

 This case has called for the most deliberate consideration of the court, not more because of the amount of property involved in the contest, than because of the importance of the principles which are to be settled by the decision.
 

 It is admitted that the deed, under which the plaintiff claims title to the property in dispute, was made by a debtor hopelessly insolvent, that the creditors for whose benefit it purports to be made are
 
 bona fide
 
 creditors, and that the deed conveyed or attempted to convey all the debtor’s property to the uses therein declared. And the principal question
 
 *453
 
 which presents itself is, does the conveyance itself manifest any intent which the court is authorized to declare fraudulent? In the case made, the attention of the court is especially drawn to two provisions in the deed, the one directing a postponement of the sale until the 1st day of January thereafter, unless a previous sale be directed by the debtor, and the other authorizing the debtor to declare the terms and places of sale. The deed bears date the 16th of August, 1841, and states the property conveyed to consist of the lots and houses in the city of Raleigh, and a tract of land in the county of Wake, which had been allotted to the debtor’s wife as her dower in the real estate of her former husband, all his interest in the lands of his wife situate in the State of Alabama and Illinois, his tract of land in the county of Northampton, purchased from E. J. Peebles, twenty shares of stock in the Gaston Rail Road, four shares in the Portsmouth and Roanoke Rail Road, all his stock of horses, mules, cattle, sheep and hogs, all his bacon, lard, corn and fodder, household and kitchen furniture, his farming utensils, library, saws, axes, bridle and saddle, all his interest in a contract with the Wilmington and Raleigh Rail Road Company for the year 1841. twenty-seven negroes named, his interest in certain negroes hired for the year, his carriage, gigs, buggies, wagons and carts, with the gear thereunto belonging, and the timber which he has on hand and not yet delivered to the Raleigh and Wilmington Rail Road Company; and the trusts declared are, that the trustee (the plaintiff) shall, with respect to his contract with the said company for the year 1841, and the timber and other things therewith connected, and the negroea,hired and employed in working under said contract, collect what may become due from the company, and after paying the necessary expenses under the said contract, hold the balance as thereinafter directed, “ and as to the other property and the said balance, the property shall be at any” time after the 1st day -of January, 1842, or before if directed by the said “ Samuel B. Spruill” (the debtor) “ on such terms and at such places as shall be directed by him; the said Henry J. Cannon” (the trustee) “is to sell the aforesaid property, and out of the proceeds to pay, first, the
 
 *454
 
 expenses of executing this indenture,” in the next place the c*e''1,; '* Thomas Deloach” (one of those recited in the premises of the deed) “and as to all the other debts and <jnes: mentioned, he is to pay them with interest and costs now due or which may become due, on suits now pending,
 
 pro rata.”
 
 The following declaration or stipulation is then subjoined: “It is however stipulated that, as the said Samuel B. Spruill is anxious to save harmless all his securities, if there be any of them unprovided for in this indenture, he is at liberty to direct them to be paid in like manner as his other securities are.” We find no difficulty in ascertaining the meaning of the parties in the trusts declared with respect to the selling of the property conveyed. The instrument is imperative in requiring the trustee to sell after the 1st of January, 1842, and reserves to the debtor the power of ordering a sale at an earlier day, and also of directing the terms and places of sale, whether made before or after that day. It is insisted that because of these provisions the deed is fraudulent on its face, first, for that such provisions are obviously framed for the ease and favor of the debtor, and to obtain for him a benefit out of the property conveyed; and secondly, for that they enable the debtor to exercise a control over the property, which is inconsistent with the professed object of the conveyance, the appropriation of all the property to the satisfaction of the creditors, and which control may enable him to hinder and defeat that object. We do not feel ourselves much embarrassed by the first objection. The deed is silent in regard to the possession of the property until the sale, and if we suppose, which is perhaps a fair interpretation of it, that the maker of the deed was «to retain the possession until it was demanded for a sale, it by no means follows that such possession would be an ease or favor t'o him, and still less that the object of such an arrangement was to procure any benefit to him. We cannot hold that the delay of a sale until the 1st day of January, 1842, is n-ot, under all the circumstances of the ease, a provision for the benefit of the creditors, so as to ensure to them the full profits of the contract with the Rail Road Company, the gathering of the growing crop, which passed with the land as an incident,
 
 *455
 
 and perhaps the obtaining of better prices for the property. And the stipulation, that, with Spruill’s consent, the sale may r ’ 1 1 . •, be hastened, seems to be so naturally and fairly accounted for by the evidence offered in explanation, that we not only do not feel ourselves bound to declare that the deed shews an intent in this respect to ease and favor the debtor, or to divert any part of his property from its professed destination, but that we are strongly impressed so far with a conviction of the honesty, both moral and legal, of the conveyance.
 

 We find more difficulty in the second objection. It does seem to us that the power reserved to the debtor, after the conveyance, to direct the terms and places of the safe, is one, which, if followed as a precedent, may lead to great abuses. It is natural for an honest debtor,, who is unable by a devotion of all his property to the satisfaction of his debts, to save altogether his preferred creditors — his sureties, or those having, in his judgment, the strongest claims on his justice and benevolence — to provide for such a disposition of the property as will probably render it most' available for that purpose. Stipulations in the deed prescribing the terms and designating the places of sale, with the view to command the best prices for the property, if they be not plainly unreasonable, may well be regarded not only as fair, but- even as commending the instrument to a favorable consideration. But stipulations, that the debtor may hereafter direct the terms and places of sale, are of a very different character, and ought to be watched with much jealousy. We believe that they are unusual, and on that account alone they ought to excite suspicion. But besides, they may be so used as to embarrass, and even prevent, the sale; and the reservation of such a power is not easily reconciled with the absolute and bona fide appropriation by the debtor of his property to the payment of his debts. Yet, after much reflection, we do not deem ourselves justified in pronouncing, that, suspicions and dangerous as these stipulations are, they make the deed vvhich contains them
 
 fraudulent in law.
 
 We are satisfied that, under the terms used, the debtor had no power to
 
 prevent
 
 a sale. The words are, “ that the property shall be at anytime alter the 1st of January, 1842, or before, if direct
 
 *456
 
 ed by the said Samuel B. Spruill, on such terms and at such places as may directed by him, the said Henry J. Cannon
 
 is to sell
 
 the aforesaid property.” It is made the
 
 duty
 
 of the trastee to sell. This is the main object and principal intent of the conveyance. A discretion over the terms and places of sale is indeed given to Spruill, and this discretion the trustee is to afford him a fair opportunity of exercising. But, if he will not exercise the power, the trustee is, by the terms of the instrument, nevertheless bound to sell. The power, therefore, is not necessarily inconsistent with the professed object of the conveyance, and when we advert to the multifarious nature of the property, and its scattered condition, and the probability that its former owner was deemed more competent than the trustee or the creditors to prescribe the best mode of selling it, we cannot say but that the power .may have been reserved for a perfectly honest purpose. If it was — if the actual intent was to effect a disposition of the property most conducive to the avowed object of the conveyance — to satisfy as far as the property could, by reasonable means, be made to satisfy the just demands of the preferred creditors. — it was not, in law, a fraudulent conveyance. And what was the actual intent, is a proper question for a jury. The defendant’s counsel has very much pressed another objection, which is not distinctly, if at all, referred to in the case. He insists that the last stipulation in the deed, by which the debtor is authorized to put other
 
 cestuis que trusts
 
 into the conveyance, is one fatal to the validity of an assignment of an insolvent debtor; for, that it is, in effect, a provision for changing at his will the application of the property professed to be conveyed for the benefit of others. There would be great force in this objection, if the stipulation in question actually conferred the power suppos-posed; but we cannot say that it does. It professes to au-' thorize the grantor, in the event of its appearing that he has omitted to provide in the deed for the indemnity of all his sureties, to require that the forgotten sureties shall share with those remembered in the conveyance. But the case does not state that any of the sureties have been thus overlooked; and unless such were the'fact, the debtor had no power
 
 to
 
 
 *457
 
 make any change in the distribution of the funds assigned.
 

 It is the opinion of this court that the judgment of non-suit should be set aside and a new trial awarded.
 

 Per Curiam, . - Nonsuit set aside and new trial awarded.